IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY ZAJAROS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:23-cv-00951 |
| | )   Judge Aleta A. Trauger |
| VOLVO CAR CORPORATION and | ) |
| VOLVO CAR USA LLC, | ) |
| | ) |
|    Defendants. | ) |

**MEMORANDUM**

Defendant Volvo Car USA LLC ("Volvo USA") has filed a Motion to Dismiss (Doc. No. 31) that, as construed, for the reasons set forth herein, will be granted.

**I.    FACTS AND PROCEDURAL HISTORY**

This case is a products liability action brought under the Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-101, *et seq.* ("TPLA"), involving allegedly defective car speakers. Plaintiff Timothy Zajaros, a citizen of Tennessee, alleges that, while driving his 2017 Volvo XC90 (the "Car") in Nashville on September 13, 2022, its speakers emitted a loud, unrelenting, piercing tone that caused him pain and has resulted in permanent hearing loss and tinnitus. (Doc. No. 19 ¶¶ 1, 5, 10, 14, 16.) In addition, the incident has caused him loss of income from his job as a producer in the entertainment business. (*Id.* ¶ 17.) The moving defendant, Volvo USA, is a Delaware limited liability company.[1] (*Id.* ¶ 3.) The other defendant, Volvo Car Corporation ("Volvo Sweden"), is a Swedish corporation. (*Id.* ¶ 2.) The plaintiff alleges that the defendants

---

[1] Despite being ordered to do so "immediately" (Doc. No. 41), Volvo USA has not filed the Business Entity Disclosure Statement required by this court's Local Rule 7.02.

designed, manufactured, and distributed his Car; that the tone was caused by a manufacturing defect known to the defendants; and that the defendants neither warned him about the defect nor attempted to correct it. (*Id.* ¶¶ 4, 15.)

The plaintiff initially sued three defendants: Volvo Cars of North America, LLC; Volvo Group North America, LLC; and Volvo USA. (Doc. No. 1 at 1–2.) The court granted Joint Motions (Doc. Nos. 13–14) that dropped defendants Volvo Cars of North America, LLC and Volvo Group North America, LLC as improper parties (Doc. No. 15) and granted the plaintiff leave to file an Amended Complaint to add Volvo Sweden as a defendant (Doc. No. 16). The Amended Complaint (Doc. No. 19) made no other substantive changes.

The Amended Complaint brings three claims under the TPLA: strict liability in tort (Count I) (Doc. No. 19 ¶¶ 18–28); negligence (Count II) (*id.* ¶¶ 29–32); and breach of the warranties of merchantability and fitness (Count III) (*id.* ¶¶ 33–36). The plaintiff seeks compensatory and punitive damages of $10 million and $20 million, respectively. (*Id.* ¶¶ 37–44, p. 8.)[2]

In February 2024, Volvo USA filed an Answer to the Amended Complaint. (Doc. No. 22.) One year later, it filed the pending Motion to Dismiss (Doc. No. 31) under Federal Rule of Civil Procedure 12(b)(6), with an exhibit embedded within the Motion (*see* Doc. No. 31 at 1) and an accompanying Memorandum (Doc. No. 32). The plaintiff has filed a Response (Doc. No. 33), with exhibits (Doc. Nos. 33-1, 33-2), and Volvo USA has filed a Reply (Doc. No. 34). During motion to dismiss briefing, Volvo Sweden was served (*see* Doc. No. 40 (showing February 28, 2025 service)), having declined to waive service nearly a year before (*see* Doc. No. 33-2) (showing that

---

[2] The plaintiff characterizes his claims for damages as "counts" or causes of action. Damages, however, are remedies, not causes of action. *See Kiser v. Terumo Med. Corp.*, No. 2:21-CV-69, 2023 WL 4778447, at *8 (E.D. Tenn. July 26, 2023) (citing *Jenkins v. Brown*, No. M2005-02022, 2007 WL 4372166, at *13 (Tenn. Ct. App. Dec. 14, 2007)).

defense counsel notified plaintiff's counsel, on March 29, 2024, that Volvo Sweden would not waive service)). The court presumes, without deciding, that it has diversity jurisdiction under 28 U.S.C. § 1332(a).

## II. LEGAL STANDARDS

A Rule 12(b) motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Volvo USA filed a responsive pleading, the Answer (Doc. No. 22), a year before it filed the Rule 12(b)(6) Motion. Thus, the court construes the Motion as a Rule 12(c) motion for judgment on the pleadings. *See Cox v. Specialty Vehicle Sols., LLC*, 715 F. App'x 443, 446 (6th Cir. 2017). It makes little practical difference, however, because the standards of review for the two motions are "[f]unctionally . . . the same." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). *See also Eye Ctrs. of Am., LLC v. Series Protected Cell 1*, 583 F. Supp. 3d 1105, 1112 (M.D. Tenn. 2022) ("A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards that govern a motion to dismiss for failure to state a claim under Rule 12(b)(6)." (citing *Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012)), *aff'd*, No. 22-5138, 2022 WL 13983763 (6th Cir. Oct. 24, 2022).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its

3

face. *Twombly*, 550 U.S. at 555–57. The court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6 Cir. 2016).

A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). This standard does not require *detailed* factual allegations, but it does require "more than labels[,] conclusions, [or] a formulaic recitation" of the elements of a cause of action. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555). And, while Rule 8 does not require details, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[T]he complaint must 'contain either direct or inferential allegations respecting all the material elements [of a claim] to sustain a recovery under some viable legal theory.'" *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 758 (E.D. Ky. 2010) (quoting *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009)).

### III. DISCUSSION

"The TPLA governs all product liability actions brought under Tennessee law," no matter the legal theory under which a case is brought. *Smith v. ZOLL Med. Corp.*, 505 F. Supp. 3d 787, 795 (W.D. Tenn. 2020) (citing Tenn. Code Ann. § 29-28-102(6)). *See Maggard v. Nyrstar Tenn. Mines*, 634 F. Supp. 3d 454, 461 (E.D. Tenn. 2022) ("The TPLA establishes the statutory framework for bringing defective product claims against manufacturers and sellers and it

supersedes common law claims for strict liability, breach of warranty, and product negligence." (citing *Coffman v. Armstrong Int'l, Inc.*, 615 S.W.3d 888, 896 (Tenn. 2021))).

To state a claim under the TPLA, the plaintiff must plausibly allege "that each defendant is either a manufacturer or seller as defined by the statute," *id.* at 462 (quoting *Steverson v. Walmart*, No. 3:19-CV-00140, 2020 WL 4700831, at *4 (M.D. Tenn. Aug. 13, 2020) (Newbern, M.J.), *R. & R. adopted*, No. 3:19-CV-00140, 2020 WL 5816245 (M.D. Tenn. Sept. 30, 2020) (Crenshaw, C.J.)), and that "(1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." *Merrell v. Summit Treestands, L.L.C.*, 680 F. Supp. 3d 907, 915 (E.D. Tenn. 2023) (quoting *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008)).

Under the TPLA, "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a). A "manufacturer" is "the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts[.]" *Id.* § 29-28-102(4). A "[s]eller" is "a retailer, wholesaler, or distributor," and "any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption." *Id.* § 29-28-102(7). However, non-manufacturer sellers can be liable under the TPLA only if one of five exceptions applies.[3]

---

[3] No product liability action, as defined in § 29-28-102, shall be commenced or maintained against any seller, other than the manufacturer, unless:

(1) The seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought;

5

Volvo USA argues that the Complaint fails to plausibly allege any facts supporting the contention that it manufactured or sold the Car.[4] (Doc. No. 32 at 1, 3–6.) Volvo USA asks the court to take judicial notice of the National Highway Traffic Safety Agency ("NHTSA") website showing that Volvo USA did not manufacture the Car and to dismiss the Complaint against it based on that showing. (*Id.* at 5.) In addition, Volvo USA argues that, even if the Amended Complaint does plausibly allege that Volvo USA sold the car, the Complaint does not allege any facts to allow the court to infer that an exception to seller immunity applies. (*Id.* at 6–8.)

In a two-page Response citing only his own exhibits, the plaintiff seemingly makes three arguments. First, he argues that, because Volvo USA has attached documents outside the pleadings, the motion has been converted into a motion for summary judgment and the court should deny the motion on that basis. (Doc. No. 33 at 1.) Second, the plaintiff argues that, because of Volvo Sweden's delayed service[5]—which, he argues, is wholly Volvo Sweden's fault for not

---

(2) Altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought;

(3) The seller gave an express warranty as defined by title 47, chapter 2;

(4) The manufacturer or distributor of the product or part in question is not subject to service of process in this state and the long-arm statutes of Tennessee do not serve as the basis for obtaining service of process; or

(5) The manufacturer has been judicially declared insolvent.

Tenn. Code Ann. § 29-28-106.

[4] The plaintiff does not allege where, or from whom, he bought the Car. The Amended Complaint alleges only that he "purchased" it and that it "was delivered to his home" in Franklin, Tennessee. (Doc. No. 19 ¶ 10.)

[5] The plaintiff is equivocal about whether Volvo Sweden had been served when the Response was filed, on March 13, 2025. (C*ontrast* Doc. No. 33 at 1 (describing the "pending" service of process), *and id.* at 2 ("*Once* Service on Volvo Car Corporation has been successful . . . ." (emphasis added)), *with id.* at 2 ("According to counsel working on Service of Process, Volvo Car Corporation has now been served, but the Return of Service has not yet been generated.").) According to the plaintiff's May 1, 2025 Affidavit of Service, Volvo Sweden was served on February 28, 2025. (Doc. No. 40 at 2.)

waiving service—the Motion to Dismiss is "premature." (*Id.*) The plaintiff explains that, because Volvo *Sweden*'s service was delayed, "Plaintiff has not been able to perform the discovery required to determine" whether Volvo *USA* is a proper party, and he should be allowed to take discovery to determine "whether the representations of Volvo [USA] are accurate." (*Id.* at 2–3.) Third, the plaintiff states, without elaboration, that he "has asserted a cause of action" against Volvo USA. (*Id.* at 2.)

To begin, the plaintiff points to no non-conclusory allegations in the Amended Complaint showing that the defendant manufactured or sold the car, and there are none. The plaintiff's unsupported statement that he has asserted a cause of action does nothing for his position. Second, the plaintiff does not support his argument that the motion is premature—either because the non-moving defendant had not yet been served or had only recently been served—with the citation to any case or Federal Rule of Civil Procedure, and the court is unaware of any case or Rule that would support such an argument.[6] Moreover, the plaintiff does not explain why it took eleven months to serve Volvo Sweden after it declined to waive service.

The court next considers the plaintiff's argument that, because the defendant attached documents outside the pleadings, the motion has been converted to a Motion for Summary Judgment and that the court should deny the motion on that basis. (*Id.* at 1.) The only matter outside the pleadings, incorporated within Volvo's motion, is a website link to NHTSA's "VIN Decoder," which the defendant marks as "Exhibit 1." (*See* Doc. No. 31 at 1.) Using the Vehicle Identification Number ("VIN") supplied by the plaintiff—YV4A22PK1H1163891—NHTSA's website shows that the Car was manufactured by defendant Volvo Sweden at a plant in Torslanda, Sweden. *VIN*

---

[6] The motion could, in fact, have been filed under Rule 12(b)(6) before Volvo USA filed its Answer in late February 2024.

7

*Decoder*, Nat'l Highway Traffic Safety Admin., https://vpic.nhtsa.dot.gov/decoder/Decoder?VIN=YV4A22PK1H1163891&ModelYear= [https://perma.cc/92P2-S2FA] (last visited June 18, 2025).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are [1] presented to and [2] not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But it is at the court's discretion whether to (a) ignore the non-pleaded facts and not convert the motion or (b) convert the motion to one for summary judgment and give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." *Id. See Eye Ctrs. of Am.*, 583 F. Supp. 3d at1113 (citing *Miller v. Mearns*, 643 F. App'x 552, 554 (6th Cir. 2016)). The plaintiff has not moved this court either to convert the motion or ignore the non-pleaded facts; nor has the plaintiff argued in the alternative that, if this court were to ignore the non-pleaded facts, the Complaint states a claim for relief—the plaintiff's unsupported statement that it has notwithstanding.

In any case, the court may take judicial notice of public records "whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), without converting a Rule 12 motion into a motion for summary judgment. *See Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (noting that, as when ruling on a Rule 12(b)(6) motion, when ruling on a 12(c) motion, "matters of public record . . . may be taken into account" (citations omitted))). Thus, courts can take judicial notice of information on government websites. *Barton v. Neeley*, 114 F.4th 581, 589 n.2 (6th Cir. 2024). And courts can take judicial notice of facts reflected on government websites, as here. *See Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) ("The Court is permitted to take judicial notice of information on the [Bureau of Prisons'] Inmate

8

Locator Service." (citation omitted)). Furthermore, at least one court has taken judicial notice of the results of a search on NHTSA's VIN Decoder—the same website Volvo USA asks this court to take judicial notice of. *See Blue Hill Specialty Ins. Co. v. Robertson*, No. 3:24-CV-747-KHJ-MTP, 2025 WL 1638516, at *7 (S.D. Miss. June 9, 2025). Thus, the court takes judicial notice of the fact that the results on NHTSA's VIN Decoder establish that, using the VIN supplied by the plaintiff, the Car was manufactured in Sweden by defendant Volvo Sweden.

The plaintiff states in his Response that, "[f]or convenience, Defendants will be collectively referred to . . . as the 'Volvo Defendants.'" (Doc. No. 19 ¶ 4.) But the Amended Complaint presents no facts to support its contention that *both* of "[t]he Defendants are the designer, manufacturer, and distributor" of the Car (Doc. No. 19 ¶ 4), which is a "bare assertion[] . . . . not entitled to be assumed true." *Iqbal*, 566 U.S. at 681 (citing *Twombly*, 550 U.S. at 554–55); *see also id.* ("It is the conclusory nature of respondent's allegations . . . that disentitles them to the presumption of truth."). The plaintiff does not allege that, for example, while the *Car* was manufactured by one defendant, the speakers were manufactured by another defendant. Nor does the Amended Complaint allege any facts to support an inference that multiple entities manufactured the Car. *Accord Spencer v. Caracal Int'l, LLC*, No. 2:20-CV-00033, 2021 WL 3550727, at *5 (M.D. Tenn. Aug. 11, 2021) (Crenshaw, C.J.) (noting that, under the TPLA, "[m]ore than one entity may be involved in the manufacture of an item under the TPLA." (citing *Rollins v. Cherokee Warehouses, Inc.*, 635 F. Supp. 136, 139 (E.D. Tenn. 1986))).

The Amended Complaint merely alleges that the collective defendants were the "designer, manufacturer, and distributor" of the Car, without providing any further facts.[7] (Doc. No. 19 ¶ 4.)

---

[7] The Amended Complaint repeats variations of this allegation. (*See, e.g.*, Doc. No. 19 ¶ 11 ("The Volvo Defendants designed, manufactured, and distributed the Vehicle."); *id.* ¶ 12 ("The Volvo Defendants are a manufacturer within the meaning of [the TPLA]."); *id.* ¶ 20

9

In essence, the only fact in support of the claim that Volvo USA had anything to do with the Car is that it has "Volvo" in its name. Moreover, the conclusory allegation that Volvo USA manufactured the Car is identical to the allegations against Volvo Cars of North America, LLC and Volvo Group North America, LLC (*see* Doc. No. 1 ¶ 5 ("The Defendants are the designer, manufacturer, and distributor of a motor vehicle at issue in this matter.")), two defendants the plaintiff voluntarily dropped from this action.

The Amended Complaint also states that the defendants "are alter egos and are sued . . . jointly and severally." (Doc. No. 19 ¶ 4.) Under an alter ego or veil piercing theory, "the corporate or other entity form is ignored, and the entity's owners are held accountable for the debts or other obligations of the entities." *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 930 (6th Cir. 2020). As with the Amended Complaint's allegations that any particular defendant manufactured the Car, however, there are no facts alleged in support of alter ego liability, or, more generally, the relationship, if any, between the two defendants. The Supreme Court of Tennessee has recently set out three necessary elements to pierce the corporate veil, including that one entity exercised control over the other. *See Youree v. Recovery House of E. Tenn., LLC*, 705 S.W.3d 193, 211 (Tenn. 2025). There, the court noted that the plaintiff's allegation that "the Defendants were the 'functional alter egos of RSN and are liable for the judgment'" was "little more than a legal conclusion" and added that, "[a]t most, it bears solely on the control element." *Id.* at 213. Here, the plaintiff does even less and has therefore failed to state a claim under alter ego liability.

---

("The Volvo Defendants manufactured and distributed products that were in a 'defective condition' as defined by [the TPLA]."; *id.* ¶ 21 ("The Volvo Defendants manufactured and distributed products that were 'unreasonably dangerous' as defined by the [TPLA]."); *id.* ¶ 31 ("Defendants negligently designed, tested, inspected, sold, and marketed the subject Vehicle.").) The Amended Complaint also alleges that both defendants were "'merchants' in the business of supplying 'goods' and/or 'products' sold for consumer usage," but does not state what relevance this has. (*See* Doc. No. 19 ¶ 34.)

10

Even without taking notice of the results of NHTSA's website, the court could find that the plaintiff has failed to plead any facts, beyond speculation, showing that Volvo USA is liable for the plaintiff's injuries. But with the NHTSA's website results establishing that Volvo Sweden manufactured the Car, the Amended Complaint does not contain sufficient facts to allow the court to draw a plausible inference that Volvo USA manufactured or sold the Car, as required to support liability under the TPLA.

## IV. CONCLUSION

The court will grant Volvo USA's Motion to Dismiss. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge